**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAPHNEE JANE ANDRE-RODNEY;
JOHN LUDEWIG; ORIE MONROE;
RYAN G. RICHARDS; RAYMOND SMITH;
PAUL J. WILLIAMS; SYED AZAD;
MICHAEL THOMAS FINELLI; and
BRYAN REEVES,

    Plaintiffs,

v.

KATHY HOCHUL, in her official capacity
as Governor of New York State;
NEW YORK STATE;
HOWARD ZUCKER, in his official capacity
as Health Commissioner of New York State;
NEW YORK STATE DEPARTMENT OF
HEALTH; and
NEW YORK STATE PUBLIC HEALTH and
PLANNING COUNCIL

    Defendants.

Case No.: 1:21-cv-01053-BKS-CFH

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT..........................................................................................................2

    I.    DEFENDANTS WERE PROPERLY SERVED ............................................ 2

    II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ...................... 3

        A.  Plaintiffs' Right to Refuse Medical Treatment............................................ 3

        B.  The Vaccine Mandate Fails Equal Protection ............................................. 6

    III.   PLAINTIFFS SATISFY IRREPARABLE HARM ........................................... 8

    IV.   BALANCE EQUITES AND PUBLIC INTEREST.......................................... 9

CONCLUSION ................................................................................10

**PRELIMINARY STATEMENT**

On September 23, 2021, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction requesting this Court to enjoin Defendants from enforcing a mandate requiring Plaintiffs and other healthcare workers to receive a COVID-19 vaccination (the "Vaccine Mandate). (Doc. 4) ("Plaintiffs' Motion"). On October 1, 2021, Defendants filed their opposition to Plaintiffs' Motion arguing that Plaintiffs have failed to meet their burden for a preliminary injunction. (Doc. 10). Specifically, Defendants content that the Plaintiffs do not have a right to continued employment and conflate the fundamental right to refuse medical treatment with the right to employment. Plaintiffs' constitutional claims, however, cannot be reduced to a protected interest in their continued employment. Rather, Plaintiffs' claims are based on the fact that the Vaccine Mandate burdens their fundamental right to refuse medical treatment and to equal protection under the law.

Surprisingly, Defendants argue that "Plaintiffs' claim that they will be terminated from their position if they refuse to vaccinate consist of mere speculation." (Doc. 10, p. 17). To underscore this position the State's Response states that "the challenged mandate does provide that a healthcare provider may terminate personnel that refuses to vaccinate, but does not require it," thus indicating the Vaccine Mandate does not require termination for failure to comply. *Id.* However, the Vaccination Mandate clearly states that covered entities *shall* require vaccination. (Doc. 1-1, p. 4). Moreover, Governor Hochul's statement that "[t]o those who refuse [the vaccination] we will find replacements," calls for no speculation.[1] The fact that Defendants now characterize Plaintiffs' claim as "speculation" epitomizes Defendants' arbitrary application of the

---

[1] Dave McKinley, *Gov. Hochul to health care workers: Get the shot or be replaced*, WRGZ, Sept. 22, 2021, https://www.wgrz.com/article/news/health/coronavirus/new-york-governor-kathy-hochul-to-healthcare-workers-get-the-shot-or-be-replaced-covid-19-vaccine-coronavirus/71-51b4f76a-c2c4-487c-ba35-f916a2022800

Vaccine Mandate in a way that justifies its ends with total disregard to its means. As detailed below, this arbitrariness is carried through Defendants' efforts to promulgate and enforce the Vaccine Mandate, and as a result, this Court should grant Plaintiffs' Motion.

## ARGUMENT

### I.   DEFENDANTS WERE PROPERLY SERVED

Defendants contend that Plaintiffs did not properly serve all Defendants with this Court's September 23, 2021 Text Order and Plaintiffs' Motion. (Doc. 10, at p. 2). Unlike a preliminary injunction, however, a temporary restraining order is not constrained by Rule 65(a)'s requirement of notice to the adverse party. *See Standard Microsystems Corp. v. Texas Instruments, Inc.*, 916 F.2d 58, 62 (2d Cir.1990) ("Where speed is needed, the rules of procedure provide for temporary restraining orders, even without notice, to prevent irreparable harm." (citing Fed.R.Civ.P. 65)). Moreover, in addition to providing Defendants with notice of this Court's Text Order through email communications with Defendants' counsel, Jorge A. Rodriguez, Plaintiffs also personally served Defendants with a copy of same.[2]

Furthermore, Fed. R. Civ. P. 65(a)(1) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The purpose of this requirement is to give the opposing party a "fair opportunity to ***oppose the motion for a preliminary injunction***[.]" *Weitzman v. Stein*, 897 F.2d 653, 657 (2d Cir.1990) (internal quotations and citations omitted) (emphasis added). As such, "the court must allow that party sufficient time to marshal his evidence and present his arguments against the issuance of the injunction[.]" *Id.* Here, Plaintiffs provided Defendants with requisite notice required by Fed. R. Civ. P. 65(a)(1) and

---

[2] To the extent that Defendants argue that this Court's Text Order did not permit Plaintiffs to serve Defendants via e-mail, the Text Order only provides that Plaintiffs serve Defendants without elaborating on the method of service.

this Court's Text Order through traditional means and email.  Additionally, the Defendants have not been prejudiced by the manner in which they were served, and the lack of prejudice is underscored by the fact that Defendants filed a voluminous opposition and supporting declarations in opposition to Plaintiffs' Motion.  Accordingly, this Court should reject Defendants' argument that Plaintiffs' Motion should be dismissed for lack of proper service.

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. Plaintiffs' Right to Refuse Medical Treatment

Defendants argue that the Vaccine Mandate does not infringe upon Plaintiffs' fundamental right to refuse medical treatment, but instead, Plaintiffs' non-fundamental right to "retain their current employment[.]" (Doc. 10, at p. 17).  In doing so, Defendants ignore that the Vaccine Mandate burdens Plaintiffs' right to refuse medical treatment by forcing them to choose between exercising a constitutionally protected right and their employment and related benefits. Indeed, Defendants recognize that where a state action burdens a fundamental right, such as the right to refuse medical treatment, strict scrutiny applies.  *Id.* at p. 18.  The strict scrutiny analysis must turn on whether the Vaccine Mandate – through subjecting Plaintiffs to receive a vaccine under the threat of loss of employment – burdens Plaintiffs' right to refuse medical treatment.  As such, the Vaccine Mandate is certainly subject to strict scrutiny insofar it penalizes Plaintiffs for exercising their fundamental right to refuse medical treatment.

Under the lens of strict scrutiny, the challenged action "must be narrowly tailored to promote a compelling Government interest," and "must use the least restrictive means to achieve its ends." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014).  The Vaccine Mandate is neither narrowly tailored nor a least restrictive means to accomplish its end goal, and Defendants have failed to establish otherwise.

First, Defendants argue that the Vaccine Mandate is "narrowly tailored to apply only to personnel in hospital settings who may be required to engage with persons infected with COVID-19" and "[i]ndviduals engaged in professions that do not require daily contact with persons infected with COVID-19, or provided them with healthcare services, are not mandated to vaccinate." (Doc. 10, p. 20). It is unclear whether Defendants are taking the position that the Vaccine Mandate only applies to hospital personnel that treat and interact with COVID-19 patients daily. If Defendants interpret the Vaccine Mandate to only apply to hospital personnel that are in daily contact with COVID-19 patients, then it seems logical that the Plaintiffs would be exempt from the Vaccine Mandate. This seemingly duplicitous position contradicts the Vaccine Mandate and Defendants' position on enforcing the Vaccine Mandate. Indeed, Governor Hochul has made clear that healthcare workers that do not comply with the Mandate will be "replaced" and has even suggested deploying the National Guard to temporarily replace those individuals.[3] Moreover, the Vaccine Mandate broadly defines the "personnel" subject to the Vaccination Mandate as "all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." (Doc. 1-1, p. 3). This definition does not support the argument raised in Defendants' Response that Vaccine Mandate only applies to healthcare workers that come into "daily contact with persons infected with COVID-19" or "provide healthcare services" to those infected individuals.

---

[3] Michael Hill and The Associated Press, *New York warns health care workers to get vaccinated or be replaced by National Guard members*, Fortune, Sept. 27, 2021, https://fortune.com/2021/09/27/new-york-state-vaccine-mandate-health-care-workers-national-guard-staff-shortage/

Second, Defendants have not demonstrated that alternative and less restrictive methods, such as masking and testing requirements, cannot be utilized to stem the spread of COVID-19. Both masking and testing requirements have been utilized since the onset of the pandemic, including when COVID-19 vaccines were available and approved under emergency authorized use. Defendants, however, have arbitrarily and unreasonably determined that those methods are no longer adequate for healthcare workers but are adequate for public school teachers. In this regard, Defendants, through the Public Health and Planning Council, concluded that the daily testing "is limited in its effect because testing only provides a person's status at the time of the test and testing every person in a healthcare facility every day is impractical and would place an unreasonable resource and financial burden on covered entities if PCR tests couldn't be rapidly turned around before the commencement of the shift" and "[a]ntigen tests have not proven as reliable for asymptomatic diagnosis to date." (Doc. 1-1, p. 14). Yet, despite that determination applicable to healthcare workers, the Public Health and Planning Council concluded that regular testing for educators in a classroom setting "enables the immediate identification of COVID-19 positive individuals, *even if they are not symptomatic*, so that they can isolate and prevent further transmission." (Doc. 1-2, p. 6) (emphasis added).

More importantly, Defendants' conclusion that testing would be impracticable and could not be rapidly turned around is simply false. On February 17, 2021, the State University of New York Chancellor Jim Malatras announced that SUNY campuses had administered 1,001,367 COVID-19 tests since the start of the 2020-2021 academic year.[4] By April 19, 2021, SUNY

---

[4] SUNY NEWS, *Chancellor Malatras Announces SUNY Campuses Administered Over One Million COVID-19 Tests Since Start of 2020-2021 Academic Year*, Feb. 17, 2021, https://www.suny.edu/suny-news/press-releases/2-21/2-17-21/index.html

surpassed 2,000,000 COVID-19 tests administered on students.[5] The type of COVID-19 tests used to achieve those testing numbers is an easily administered FDA approved saliva test that has been described as "cost-effective, easy and reliable."[6] Additionally, Defendants' position that "testing every person in a healthcare facility every day is impractical" is not a reality healthcare facilities would confront. Indeed, Defendants have made clear that only unvaccinated individuals must tested as is the case for unvaccinated teachers. (Doc. 1-2, p. 2-3). Thus, the notion that "every person in a healthcare facility" would need to be tested daily is simply not true.

In sum, as the Supreme Court stated in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), regulations that are on their face "arbitrary and oppressive" justifies judicial intervention. Defendants have arbitrarily decided that the effectiveness of COVID-19 tests in other State controlled environments cannot be as effective in a healthcare environment. If indeed the Vaccine Mandate is simply a cost avoidance measure, it ignores the economic consequences to the Plaintiffs, patients and healthcare facilities and should fail the strict scrutiny standard of review.

### B. The Vaccine Mandate Violates Equal Protection Rights

Defendants argue that Plaintiffs (and other healthcare workers) are not similarly situated to public school teachers in the State of New York because, in large part, the difference between the nature of those employments. (Doc. 10, p. 11-12). Notwithstanding, Defendants cannot reconcile this argument with that fact that they have previously identified healthcare workers and teachers as individuals with an increased risk of transmitting COVID-19 based on the nature of

---

[5] SUNY NEWS, *Chancellor Malatras Announces Opening of SUNY Upstate COVID-19 Testing Laboratory at University at Buffalo to Increase Testing Capacity and Speed*, Apr. 5, 2021, https://www.suny.edu/suny-news/press-releases/4-21/4-5-21/ub-covid-test-lab.html

[6] Amber Smith, *How scientists created a top COVID-19 test that uses saliva: The process is cost-effective, easy and reliable,* Upstate Medical University, May 13, 2021, https://www.upstate.edu/whatsup/2021/051321-how-scientists-created-a-top-covid-19-test-that-uses-saliva.php

6

those employments. *Compare* Doc. 1-1 at p. 25 ("Unvaccinated personnel in [the healthcare setting] have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents…") *with* Doc. 1-2 at p. 19 (identifying public school teachers as "population segment [] that may be at increased risk of transmission due, in part, to their employment or residential circumstances."). Moreover, Defendants ignore the growing evidence that children are increasingly at risk of contracting and transmitting COVID-19. *See* Doc. 4-1, at p. 5. In fact, according to the American Academy of Pediatrics, nearly 850,000 child COVID-19 cases have been reported over the last four weeks.[7]

Defendants' logic in differentiating Plaintiffs from teachers also misses the mark insofar as it diverges from the compelling state interest at issue: "stemming the spread of COVID-19[.]" Doc. 10, at p. 19. Accordingly, the similarity between Plaintiffs and teachers must be assessed through the risk they pose of transmitting the COVID-19 virus. To that end, Plaintiffs and teachers are similarly situated. Both Plaintiffs and teachers encounter unvaccinated and infected individuals at the workplace. In fact, teachers, unlike Plaintiffs, most certainly come into daily contact with unvaccinated persons because of the age restrictions on COVID-19 vaccinations for children. Simply put, in pursuit of the compelling interest in the stemming the spread of COVID-19, healthcare workers and teachers are similarly situated to an extent warranting equal protection under the law.

Moreover, Defendants cannot rationally argue why healthcare workers cannot also qualify for a weekly/daily test in lieu of the COVID-19 vaccine. In promulgating the testing mandate for teachers, Defendants decided that weekly testing and mask requirements are sufficient means to

---

[7] American Academy of Pediatrics, "Children and Covid-19: State-Level Data Report," Sept. 30, 2021, https://downloads.aap.org/AAP/PDF/AAP%20and%20CHA%20-%20Children%20and%20COVID-19%20State%20Data%20Report%209.30%20FINAL.pdf

curb the spread of COVID-19 in public schools where millions of unvaccinated students come into daily contact with 212,000 teachers, but not in the healthcare setting where, as of August 16, 2021, 458,940 workers in New York State have been fully vaccinated. (*See* Doc. 4-1).

Stated plainly, the testing mandate regulating teachers does not make a COVID-19 vaccination a condition of a public-school teacher's employment while the Vaccine Mandate makes a COVID-19 vaccination a condition of Plaintiffs' employment. Defendants have not, and cannot, provide a rational reason to support this deprivation of Plaintiffs' rights while simultaneously protecting the same right for similarly situated persons. This is a violation of Plaintiffs' right to equal protection under the law. *Sound Aircraft Servs., Inc. v. Town of E. Hampton*, 192 F.3d 329, 335 (2d Cir. 1999) ("[a]t its core, equal protection prohibits the government from treating similarly situated persons differently").

### III. PLAINTIFFS SATISFY IRREPARABLE HARM

Plaintiffs have also met the irreparable harm requirement having alleged that the Vaccine Mandate violates a constitutionally protected right. *See, e.g., Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury." (internal quotation marks and citations omitted)); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2dCir. 1996) (clarifying that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm" and a substantial likelihood of success on the merits of a constitutional violation is not necessary). Defendants concur by stating that "[c]ourts in this Circuit have made clear that alleging a

8

constitutional violation constitutes irreparable harm, rending a further showing of irreparable harm unnecessary." (Doc. 10, p. 22) (collecting cases).

Nevertheless, Defendants argue that "Plaintiffs' contentions with respect to purported irreparable harm are unfounded" given that Plaintiffs may seek employment in non-health care settings. *Id.* Defendants fail to acknowledge that Plaintiffs by losing their jobs as a result of the Vaccine Mandate, are not merely deprived of a paycheck. Indeed, Plaintiffs are deprived of their professional seniority and standing that they have worked to obtain throughout their entire careers. Governor Hochul has also made clear that healthcare workers that are terminated for failure to vaccinate will not be eligible for unemployment benefits.[8]

Accordingly, Plaintiffs have met the irreparable harm element.

## IV. BALANCE EQUITES AND PUBLIC INTEREST

The balance of equites tips in Plaintiffs' favor. Plaintiffs are forced into a position to receive an unwanted medical treatment or lose their jobs. Defendants, on the other hand, are in a position where 92.49% of healthcare workers have been vaccinated and only 7.51% have yet to receive a vaccination. (Doc. 10, p. 3). With so few healthcare workers unvaccinated, the balance of equities and the public interest must tilt in favor of the Plaintiffs, especially since the State has decided that the compelling interest of controlling COVID-19, can be accomplished by enforcing masking and testing requirements for other State employees.

Additionally, a preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012). During a pandemic, the public has an interest in a

---

[8] Nathan Layne, *New York may tap National Guard to replace unvaccinated healthcare workers*, Reuters, Sept. 27, 2021, https://www.reuters.com/world/us/new-york-may-tap-national-guard-replace-unvaccinated-healthcare-workers-2021-09-26/

9

fully operational healthcare system, regardless of the vaccination status of the healthcare workers. The fact that hospitals in New York State are suspending some of their services as a direct result of the Vaccine Mandate is inherently detrimental to the public interest.

Defendants again cry speculation at Plaintiffs' claim that the Vaccine Mandate will cause healthcare shortages in hospitals. Defendants' assertion, however, that Plaintiffs' claim that the Vaccine Mandate will cause healthcare shortages in hospitals is speculative.  Governor Hochul issued an Executive Order "Declaring a Statewide Disaster Emergency Due to Healthcare Staffing Shortages in the State of New York."[9]  Defendants cannot have it both ways in this regard and there is no room for Defendants' manufactured speculation. Therefore, the public has an interest in enjoining the enforcement of the Vaccine Mandate.

## **CONCLUSION**

Based on the foregoing, this Court should grant Plaintiffs' Motion and enjoin the enforcement of the Vaccine Mandate against Plaintiffs.

Dated: October 8, 2021

Respectfully submitted,

LIPPES MATHIAS WEXLER FRIEDMAN LLP

/s/ Dennis C. Vacco
Dennis C. Vacco, Esq. (Roll No.: 105051)
Scott S. Allen Jr., Esq. (Roll No.: 700751)
*Attorneys for Plaintiffs*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
T: (716) 853-5100
E: dvacco@lippes.com
E: sallen@lippes.com

---

[9] Executive Order [K. Hochul] No. 4, "Declaring a Statewide Disaster Emergency Due to Healthcare Staffing Shortages in the State of New York," Sept. 27, 2021.