UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DAPHNE JANE ANDRE-RODNEY, JOHN LUDEWIG,
ORIE MONROE, RYAN G. RICHARDS, RAYMOND
SMITH, PAUL J. WILLIAMS, SYED AZAD, MICHAEL             1:21-cv-1053 (BKS/CFH)
THOMAS FINELLI, and BRYAN REEVES,

                            Plaintiffs,

v.

KATHY HOCHUL, in her official capacity as Governor of
New York State, NEW YORK STATE, HOWARD
ZUCKER, in his official capacity as Health Commissioner
of New York State, NEW YORK STATE DEPARTMENT
OF HEALTH, and NEW YORK STATE PUBLIC
HEALTH AND PLANNING COUNCIL,[1]

                            Defendants.
_____

**Appearances:**

*For Plaintiffs*:
Dennis C. Vacco
Scott S. Allen Jr.
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

*For Defendants:*
Letitia James
Attorney General of the State of New York
Jorge A. Rodriguez
Brittany M. Haner
Assistant Attorneys General, of Counsel
The Capitol
Albany, NY 12224

___

[1] It appears that the correct name of this entity is the Public Health and Health Planning Council. (Dkt. No. 10-1, ¶ 5; Dkt. No. 1-1, at 2).

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

On September 22, 2021, Plaintiffs, New York State Security Services Assistants and Safety & Security Officers who currently work at hospitals located in New York State, commenced this action against Defendants under 42 U.S.C. § 1983 to challenge the mandate that they be "fully vaccinated against COVID-19" and receive a first dose of the vaccine by September 27, 2021 as violative of their constitutional rights. (Dkt. No. 1); *see* 10 N.Y.C.R.R. § 2.61(c). On September 23, 2021, Plaintiffs filed a motion under Federal Rule of Civil Procedure 65 for a temporary restraining order ("TRO") and preliminary injunction enjoining Defendants "from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the vaccine mandate." (Dkt. No. 4-2, at 3). On September 23, 2021, the Court denied Plaintiffs' motion for a TRO and set a briefing schedule on the motion for a preliminary injunction. (Dkt. No. 8). On October 29, 2021, the Court held a telephonic hearing on the motion.[2] Having considered the parties' submissions, (Dkt. Nos. 4, 10, 12), and argument at the hearing, the Court denies Plaintiffs' motion for a preliminary injunction.

## II.    BACKGROUND[3]

### A.     COVID-19 Vaccines

This case arises out of regulations adopted by the Public Health and Health Planning Council (the "Council") of the New York State Department of Health ("DOH") in response to

---

[2] At the hearing Plaintiffs' counsel stated that there are four Plaintiffs who remain unvaccinated, and that he would be filing a motion to dismiss the Plaintiffs who became vaccinated after this action was filed.

[3] The facts set forth herein are drawn from the Complaint and the exhibits attached thereto, as well as the exhibits submitted by both parties in connection with Plaintiffs' motion for a TRO and preliminary injunction. (Dkt. Nos. 1, 4, 10, 12).

the COVID-19 pandemic. The United States Department of Health and Human Services declared COVID-19 a public health emergency on February 4, 2020. (Dkt. No. 1, ¶ 28). Pharmaceutical companies Pfizer, Moderna, and Johnson & Johnson ("Janssen") all applied for and received emergency use authorization ("EUA") for the COVID-19 vaccines each developed. (*Id.* ¶ 31; *see also* Dkt. No. 10-1, ¶¶ 49–54). On August 23, 2021, the Food and Drug Administration ("FDA") fully approved the Pfizer vaccine for individuals 16 years of age and older. (Dkt. No. 1, ¶ 32; Dkt. No. 10-1, ¶ 55). The Moderna and Janssen vaccines retain their EUA but have not yet been fully approved by the FDA; the Pfizer vaccine also remains available under EUA for individuals 12 years of age and older. (Dkt. No. 1, ¶ 33; Dkt. No. 10-1, ¶ 55).

The COVID-19 vaccines have proven effective in protecting individuals against serious disease and death from COVID-19. (Dkt. No. 10-1, ¶ 41). Vaccinated individuals are also less likely to transmit COVID-19 to others. (*Id.* ¶ 44). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), the COVID-19 vaccines "are safe for almost all patients." (*See id.* ¶ 41). However, as Plaintiffs allege, the vaccines "carry a risk of side effects," which range from temporary reactions to, more rarely, serious side effects that could result in hospitalization or death. (Dkt. No. 1, ¶ 34 (citing CDC, "Possible Side Effects After Getting a COVID-19 Vaccine" (last updated Sept. 30, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect/after.html)); *see also* CDC, "Selected Adverse Events Reported after COVID-19 Vaccination" (last updated October 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html.

### B. The Vaccine Mandate

DOH has the authority to "supervise and regulate the sanitary aspects" of "businesses and activities affecting public health." N.Y. Pub. Health Law § 201(1)(m). Pursuant to its authority, DOH published a proposed emergency regulation for review and adoption by the Council. (Dkt.

No. 10-1, ¶ 6). The Council adopted the emergency regulation on August 26, 2021; the regulation immediately went into effect for ninety days. (*Id.*; *see also* Dkt. No. 1-1 (text of the adopted amendment and its Regulatory Impact Statement)); *see* 10 N.Y.C.R.R. § 2.61 (regulation as codified) (the "Vaccine Mandate"). The Vaccine Mandate was adopted against the backdrop of the predominance of the Delta variant of the COVID-19 virus, a variant which is more than twice as transmissible as previous variants. (Dkt. No. 10-1, ¶¶ 8, 10, 13).

The Vaccine Mandate applies to "[c]overed entities," defined to comprise any facility included in the definition of "hospital" in Public Health Law § 2801, agencies established pursuant to Public Health Law Article 36, hospices as defined in Public Health Law § 4002, and adult care facilities under DOH's regulatory authority. 10 N.Y.C.R.R. § 2.61(a)(1). The Vaccine Mandate requires covered entities to "continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for all other covered entities absent receipt of an exemption." *Id.* § 2.61(c).[4] "Personnel" is defined as "all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *Id.* § 2.61(a)(2).

Plaintiffs are nine individuals who are either New York State Security Services Assistants or Safety & Security Officers who presently work in hospitals, as defined by Public Health Law § 2801. (Dkt. No. 1, ¶¶ 1, 12–20). The facilities they work at include SUNY Downstate Health

---

[4] Medical exemptions are available if "any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of [a] member of a covered entity's personnel, based upon a pre-existing health condition" until immunization "is found no longer to be detrimental to such personnel member's health." *See id.* § 2.61(d)(1).

4

Sciences University, SUNY Stony Brook, and the NYS Veterans Home at Montrose, New York. (*Id.* ¶¶ 12–20). Each Plaintiff is a member of the New York State Correctional Officers and Police Benevolent Association, Inc. (*Id.* ¶ 21). Plaintiffs object to the Vaccine Mandate and state that they will lose their jobs "unless they submit to the invasions of their bodies through a vaccination that carries unknown risks of serious side effects." (*Id.* ¶ 50). Plaintiffs are "willing to abide by all mask mandates and a Testing Option." (*Id.* ¶ 48).

## III. STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs temporary restraining orders and preliminary injunctions. In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction. *Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014); *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) ("It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction."). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). However, where, as here, a party challenges "governmental action taken in the public interest pursuant to a statutory or regulatory scheme," it cannot rely on the "serious questions on the merits" alternative. *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014). Accordingly, Plaintiffs must demonstrate a likelihood of success on the merits.[5]

---

[5] Defendants cite the heightened standard applicable to (1) "mandatory" injunctions which alter the status quo and (2) injunctions which "will provide the movant with substantially all the relief sought and that relief cannot be undone

IV.     ANALYSIS[6]

    A.     **Likelihood of Success on the Merits**

Plaintiffs' complaint alleges that the Vaccine Mandate violates their (1) Fourteenth Amendment right to Equal Protection, (2) Fourteenth Amendment right to refuse unwanted medical treatment, and (3) Fourteenth Amendment right to due process. (Dkt. No. 1, ¶¶ 56–99).

        1.     **Equal Protection Claim**

Plaintiffs argue that they are likely to prevail on their claim that the Vaccine Mandate violates the Equal Protection Clause because it treats Plaintiffs differently than a similarly situated group—teachers—without any rational basis. (Dkt. No. 4-1, at 5–12). Specifically, Plaintiffs argue that individuals who work in healthcare settings are similarly situated to teachers because (1) both groups interact with populations who are vulnerable to COVID-19 and who may transmit the virus to others and (2) both groups "come into daily contact with thousands of unvaccinated people" and may themselves be infected with COVID-19 or transmit the virus. (*Id.* at 6–8). Plaintiffs argue there is no rational basis for imposing the Vaccine Mandate on those working in healthcare settings but not on teachers, who have the option, in lieu of vaccination, of regular testing. (*Id.* at 8–12).[7] Defendants respond that Plaintiffs are not similarly situated to

---

even if the defendant prevails at a trial on the merits." (Dkt. No. 10, at 7 (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). In these situations, the movant must show a "clear" or "substantial" likelihood on the merits and make a "strong showing" of irreparable harm. *Actavis*, 787 F.3d at 650 (citations omitted). However, the injunction Plaintiffs seek—enjoining enforcement of a regulation—is plainly prohibitory, *see Hund v. Cuomo*, 501 F. Supp. 3d 185, 207 (W.D.N.Y. 2020), and Defendants have not otherwise explained how this heightened standard is applicable in this case.

[6] Defendants argue that Plaintiffs' motion should be dismissed because Plaintiffs served a copy of the Court's September 23, 2021 Text Order by email and therefore did not provide proper notice. (Dkt. No. 10, at 4 & n.2). However, the record indicates that Defendants received actual notice of the Text Order, (Dkt. No. 9, at 1–2), and Defendants do not indicate how service of the Text Order prejudiced them in responding to Plaintiffs' motion. *See Rosen v. Siegel*, 106 F.3d 28, 31–32 (2d Cir. 1997) (noting that the purpose of Rule 65's notice requirement is to "give the opposing party a fair opportunity to oppose the motion for a preliminary injunction" (internal quotation marks and citations omitted)). The Court finds that service by email does not warrant dismissal of Plaintiffs' motion, and notes that Defendants do not seek any other relief.

[7] On September 2, 2021, the Council approved regulations applicable to settings which "may include schools." (*See* Dkt. No. 1-2 (text of the adopted regulation and its Regulatory Impact Statement)); *see* 10 N.Y.C.R.R. § 2.62

teachers because the two groups "do not engage in the same type of work" and that the difference in treatment has a rational basis. (Dkt. No. 10, at 13–17).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause therefore "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Where the law at issue "neither burdens a fundamental right nor targets a suspect class," the Court will uphold a "classification so long as it bears a rational relation to some legitimate end." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). This "rational-basis" review is a "highly deferential" review which presumes that a law is constitutional. *Id.* (citations omitted). The burden is on the challenger "to negative every conceivable basis which might support" the law. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (citation omitted).

Here, considering the Vaccine Mandate and the regulations applicable to New York State teachers together, DOH's regulations make a distinction between individuals who are employed in healthcare settings and those who work in schools. *See* 10 N.Y.C.R.R. §§ 2.61(c), 2.62(a). A classification based on one's profession or work setting is not a suspect classification subject to strict scrutiny, *see City of Cleburne*, 473 U.S. at 440–41 (discussing classifications subject to strict scrutiny), and the parties have not argued that the classification is otherwise subject to a heightened scrutiny. Accordingly, the differential treatment of employees in healthcare and

---

(regulation as codified). Section 2.62 provides that the Commissioner "may require routine COVID-19 testing in certain settings," such as schools. 10 N.Y.C.R.R. § 2.62(a). The entities subject to routine testing "may accept documentation demonstrating full vaccination in lieu of imposing such testing requirements." *Id.* § 2.62(a)(1). However, full vaccination is not mandated.

school settings is subject to rational basis review and will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 219 (2d Cir. 2012); *see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (noting that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated" the enacting authority).[8]

Plaintiffs argue that there is no rational basis for the regulations' differential treatment of employees in healthcare settings and teachers because the two regulations have similar goals—the control of communicable diseases, (Dkt. No. 1-1, at 10; Dkt. No. 1-2, at 5)—and seek to protect vulnerable populations, yet Defendants deem regular testing in lieu of vaccination sufficient for teachers but not for Plaintiffs. (Dkt. No. 4-1, at 9–10). Plaintiffs point out that the Vaccine Mandate's Regulatory Impact Statement states that the alternative approach of testing personnel before each shift would be "limited in its effect" and "impractical" and put an "unreasonable resource and financial burden on covered entities." (*See* Dkt. No. 1-1, at 14). On the other hand, a testing requirement for teachers was deemed sufficient and the State received federal funding for such efforts. (*See* Dkt. No. 1-2, at 7). Finally, Plaintiffs point to studies suggesting that personal protective equipment is effective in curtailing transmission of COVID-19 at hospitals. (Dkt. No. 4-1, at 10–12).

The Court finds that Plaintiffs have not shown a likelihood of success on the merits of their Equal Protection Claim because they have not negated "every conceivable basis which

---

[8] Because the regulations at issue distinguish between two classes, employees in healthcare settings and teachers, the "class-of-one" theory of Equal Protection is not implicated in this case. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (recognizing successful Equal Protection claims brought by a "class of one" where the plaintiff does not allege membership in a class or group). Accordingly, the Court need not determine whether Plaintiffs and teachers are sufficiently "similarly situated." *See, e.g.*, *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010) ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." (citation and brackets omitted)). Even if they were, for the reasons discussed in this decision, Plaintiffs have not shown they are likely to succeed on their rational-basis challenge.

8

might support" the Vaccine Mandate. *Lehnhausen*, 410 U.S. at 364. Defendants state that healthcare workers have a higher risk of contracting COVID-19 "due to their close and immediate contact with infected patients." (Dkt. No. 10, at 14 (citing Dkt. No. 10-1, ¶¶ 24–27)). Moreover, individuals who work in healthcare settings are likely to be delivering "direct medical assistance and care" to people who may have COVID-19, who may be vulnerable to contracting the virus, or who may be more likely to suffer from complications from the virus "due to comorbidities or compromised immune systems." (*Id.*). Defendants also point out that requiring employees in healthcare settings to be vaccinated is important because these employees are "essential to the efforts to stop the spread of COVID-19" and to treat those who contract the virus. (*Id.* at 15). An outbreak among unvaccinated staff in these settings may cause staffing shortages and lead to healthcare facilities' decreased capacity to treat patients. (*Id.* (citing Dkt. No. 10-1, ¶ 35)). An outbreak in a school setting would not have such a negative impact on healthcare capacity. For all of these reasons, it is not irrational to conclude that the healthcare setting is different from, and therefore requires different preventative measures than, the school setting. *See, e.g.*, *Bill & Ted's Riviera, Inc. v. Cuomo*, 494 F. Supp. 3d 238, 247 (N.D.N.Y. 2020) (denying motion for preliminary injunction where there were "rational arguments from which one can conclude that sufficient differences exist between a venue that hosts the general public for dining and one that hosts a special social gathering such as a wedding to support the application of different restrictions" during the pandemic); *Moxie Owl, Inc. v. Cuomo*, 527 F. Supp. 3d 196, 203 (N.D.N.Y. 2021) (finding the plaintiff had not shown a likelihood of success on the merits of an Equal Protection claim where the Court offered a "rational speculation as to why bowling alleys were treated differently than axe-throwing venues" during the COVID-19 pandemic); *Maniscalco v. N.Y. City Dep't of Educ.*, No. 21-cv-5055, 2021 WL 4344267, at *5,

2021 U.S. Dist. LEXIS 184971, at *13–14 (E.D.N.Y. Sept. 23, 2021) (finding that it was not irrational for the New York City Department of Health and Mental Hygiene to require vaccination of the City's Department of Education employees, while other municipal employees were provided an opt-out testing option), *aff'd*, 2021 WL 4814767, 2021 U.S. Dist. LEXIS 30967 (2d Cir. Oct. 15, 2021).

Accordingly, the Court finds that Plaintiffs have not made a showing of a likelihood of success on the merits of their Equal Protection claim.

### 2. Fourteenth Amendment Substantive Due Process Claim

Plaintiffs argue the Vaccine Mandate is subject to strict scrutiny because it substantially burdens their fundamental right under the Fourteenth Amendment to refuse unwanted medical treatment, and that the Vaccine Mandate cannot survive such scrutiny. (Dkt. No. 4-1, at 12–16). Defendants respond that the Vaccine Mandate does not violate Plaintiffs' rights under the framework set forth in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), and that it would survive strict scrutiny in any event. (Dkt. No. 10, at 17–24).

#### a. The Applicability of *Jacobson*

As an initial matter, the parties dispute whether the Vaccine Mandate should be evaluated under the framework of *Jacobson v. Massachusetts* or under the traditional tiers of scrutiny used to assess constitutional claims. In *Jacobson*, the Supreme Court considered a Massachusetts statute, enacted during a smallpox epidemic, which required individuals to be vaccinated, pay a $5 fine, or, in the case of children, establish their qualification for an exemption. 197 U.S. at 12. The plaintiff claimed that the statute violated his "inherent right" to "care for his own body and health in such way as to him seems best." *Id.* at 26. The Supreme Court explained that "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances,

10

wholly freed from restraint." *Id.* Rather, "[t]here are manifold restraints to which every person is necessarily subject for the common good." *Id.* "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." *Id.* (quoting *Crowley v. Christensen*, 137 U.S. 86, 89 (1890)). The Supreme Court therefore instructed that a court must not invalidate a law or regulation "enacted to protect the public health" unless it lacks a "real or substantial relation [to public health]" or "is, beyond all question, a plain, palpable invasion of rights." *Id.* at 31. Although *Jacobson* predated the modern tiers of scrutiny, *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020), it has been recognized that the Court "essentially applied rational basis review," *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring).

Many courts applied *Jacobson*'s deferential framework in the early months of the COVID-19 pandemic when considering challenges to various COVID-19 restrictions. *See Jones v. Cuomo*, No. 20-cv-4898, --- F. Supp. 3d ---, 2021 WL 2269551, at *6, 2021 U.S. Dist. LEXIS 104323, at *14–15 (S.D.N.Y. June 2, 2021) (collecting cases). However, the Supreme Court's decision in *Roman Catholic Diocese* has introduced greater uncertainty about the continued applicability of *Jacobson*. *See, e.g., id.*, 2021 WL 2269551, at *6, 2021 U.S. Dist. LEXIS 104323, at *15–16. In temporarily enjoining the enforcement of a New York Executive Order that severely restricted in-person attendance at religious services, the Supreme Court employed traditional constitutional analysis of the plaintiffs' Free Exercise Claims by subjecting the Order to strict scrutiny. *Roman Catholic Diocese*, 141 S. Ct. at 66–67 (per curiam). Although the majority opinion did not mention *Jacobson*, Justice Gorsuch indicated in a concurring opinion that the "usual constitutional standards should apply during the current pandemic." *Id.* at 71

(Gorsuch, J., concurring); *see also Jones*, 2021 WL 2269551, at *6, 2021 U.S. Dist. LEXIS 104323, at *16.

Since *Roman Catholic Diocese*, some courts have expressed doubts about the continued applicability and reach of *Jacobson*. *See, e.g.*, *Amato v. Elicker*, No. 20-cv-464, --- F. Supp. 3d ---, 2021 WL 1430918, at *7 n.11, 2021 U.S. Dist. LEXIS 72507, at *17 n.11 (D. Conn. Apr. 15, 2021) (applying, "in view of the uncertainty created by *Roman Catholic Diocese*" about *Jacobson*, the "traditional tiers of scrutiny"); *Plaza Motors of Brooklyn, Inc. v. Cuomo*, No. 20-cv-4851, 2021 WL 222121, at *5, 2021 U.S. Dist. LEXIS 12726, at *12–13 (E.D.N.Y. Jan. 22, 2021) ("Justice Gorsuch's concurrence in [*Roman Catholic Diocese*] informs the Court's analysis and instructs the Court to apply its usual tiers of scrutiny."); *see also Klaassen v. Trs. of Indiana Univ.*, No. 21-cv-238, --- F. Supp. 3d ---, 2021 WL 3073926, at *20, 2021 U.S. Dist. LEXIS 133300, at *53–54 (N.D. Ind. July 18, 2021) (stating that "a legitimate question is the extent to which *Jacobson* applies with full force today," a "topic of some debate," and collecting cases), *aff'd*, 7 F.4th 592 (7th Cir. 2021). However, a number of courts have "cabined" *Roman Catholic Diocese* "to First Amendment free exercise challenges" and continue to apply *Jacobson* to "other challenges to COVID-19 restrictions." *Jones*, 2021 WL 2269551, at *7, 2021 U.S. Dist. LEXIS 104323, at *17–18 (collecting cases); *see Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 712 (S.D.N.Y. 2021) (holding in a non-Free Exercise challenge context that, "[a]lthough *Roman Catholic Diocese* and *Agudath Israel* raise doubts as to *Jacobson*'s continuing viability, *Jacobson* bears directly on this case and has not been explicitly overruled, which means that this Court is bound by it").

Here, as set forth below, Plaintiffs have not shown a likelihood of success on their claims, whether the Court applies the *Jacobson* framework or the traditional constitutional analysis for state action alleged to burden constitutional rights.

### b. Application

State action that infringes upon a fundamental right is ordinarily analyzed under the test of strict scrutiny. *See, e.g.*, *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (observing that "[w]here the right infringed is fundamental, strict scrutiny is applied to the challenged governmental regulation"). Under that test, the challenged action "must be narrowly tailored to promote a compelling Government interest," and "must use the least restrictive means to achieve its ends." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014) (citation omitted). Under *Jacobson*, the Court considers whether the regulations lack a "real or substantial relation" to the public health and public safety, whether the regulations are "beyond all question, a plain palpable invasion of rights secured by fundamental law," and whether the regulations are so arbitrary and oppressive as to warrant judicial interference. 197 U.S. at 31–39.

The right to refuse unwanted medical procedures is a protected right. *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) (finding a "constitutionally protected liberty interest in refusing unwanted medical treatment"). Plaintiffs, however, are unlikely to succeed in showing that the Vaccine Mandate directly infringes on this right, as it does not force Plaintiffs to consent to vaccination. *Cf. Doe v. Zucker*, 520 F. Supp. 3d 217, 250–51 (N.D.N.Y. 2021) (finding that regulations requiring vaccination of schoolchildren did not "directly infringe" on the plaintiffs' liberty interest in refusing unwanted medical treatment because they did not "force parents to consent to vaccination of their children"), *appeal docketed*, No. 21-537 (2d Cir. Mar. 5, 2021). Rather, the Vaccine Mandate conditions Plaintiffs' right to be employed at a covered entity on their vaccination against COVID-19. Thus, the right that is being burdened is the right

13

to employment at a covered healthcare entity in New York. While Plaintiffs may have "some generalized due process right to choose one's field of private employment," *see Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999), this right is "subject to reasonable government regulation" and is afforded protection only when an individual is "completely prohibited" from engaging in his or her profession, *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (brackets omitted). Here, Plaintiffs are not barred completely from employment as Security Services Assistants or Safety & Security Officers, but only from working at a covered entity while unvaccinated. *Cf. Maniscalco*, 2021 WL 4344267, at *3, 2021 U.S. Dist. LEXIS 184971, at *6–7 (finding that New York City teachers' rights to pursue their profession were not violated where, although the vaccine mandate at issue "may render it more difficult for them to pursue their calling, plaintiffs are not absolutely being barred from doing so"). Accordingly, the Vaccine Mandate does not burden a fundamental right. *Cf. Dixon v. de Blasio*, No. 21-cv-5090, --- F. Supp. 3d ---, 2021 WL 4750187, at *9, 2021 U.S. Dist. LEXIS 196287, at *20 (Oct. 12, 2021) (noting, in a challenge to New York City orders requiring vaccination to enter center indoor facilities, that the orders "are not forcing New Yorkers to get vaccinated," but "merely placing restrictions on those who choose not to").[9]

Moreover, to the extent that Plaintiffs raise an "unconstitutional conditions" claim that the Vaccine Mandate unconstitutionally coerces them into giving up their interest in refusing unwanted medical treatment, Plaintiffs still have not shown a likelihood of success on the merits.

---

[9] District courts in other Circuits have framed the right at issue similarly in comparable cases. *See, e.g.*, *Valdez v. Grisham*, No. 21-cv-783, --- F. Supp. 3d ---, 2021 WL 4145746, at *5, 2021 U.S. Dist. LEXIS 173680, at *16–17 (D.N.M. Sept. 13, 2021) (in a challenge to New Mexico requirements that all hospital workers and state fair goers be vaccinated, framing the rights at issue as "the right to work in a hospital or attend the State Fair, unvaccinated and during a pandemic"), *appeal docketed*, No. 21-2105 (10th Cir. Sept. 15, 2021); *Norris v. Stanley*, No. 21-cv-756, --- F. Supp. 3d ---, 2021 WL 4738827, at *2, 2021 U.S. Dist. LEXIS 198388, at *4–5 (W.D. Mich. Oct. 8, 2021) ("The [Michigan State University] vaccine policy does not force Plaintiff to forgo her rights to privacy and bodily autonomy, but if she chooses not to be vaccinated, she does not have a right to work at MSU at the same time.").

Many courts have recognized that the liberty interest in refusing medical treatment has been "confined either by duly enacted and constitutional state laws or the state's legitimate interests that it had rationally pursued in regulation." *Klaassen*, 2021 WL 3073926, at *23, 2021 U.S. Dist. LEXIS 133300, at *60; *see Dixon*, 2021 WL 4750187, at *8, 2021 U.S. Dist. LEXIS 196287, at *19–20 (noting that courts have "rejected the idea of a fundamental right to refuse vaccination" and generally apply rational basis review to vaccination requirements). Indeed, the Second Circuit has held that "mandatory vaccination" is "within the State's police power." *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (citing *Jacobson*, 197 U.S. at 25–27); *see also Klaassen*, 2021 WL 3073926, at *24, 2021 U.S. Dist. LEXIS 133300, at *62–63 (noting the "consistent use of rational basis review to assess mandatory vaccination measures" and collecting cases). Accordingly, because the Vaccine Mandate does not burden a fundamental right, it is subject to rational basis review.[10]

The Court finds that Plaintiffs have not shown a likelihood of success on the merits because they have not negated "every conceivable basis which might support" the Vaccine Mandate. *Lehnhausen*, 410 U.S. at 364. "Stemming the spread of COVID-19 is unquestionably a compelling [state] interest," *Roman Catholic Diocese*, 141 S. Ct. at 67, and requiring those who work in healthcare settings to be vaccinated is rationally related to the furtherance of that interest. *See Dixon*, 2021 WL 4750187, at *5, 2021 U.S. Dist. LEXIS 196287, at *11–12 (finding "the rise of the COVID-19 Delta variant, the potential for the disease to overwhelm healthcare infrastructure, and the increased prevalence of breakout cases" to be "rational justifications" for the requirement that DOE employees be vaccinated); *see also Klaassen*, 2021

---

[10] Thus, the Court need not address the parties' arguments regarding whether the Vaccine Mandate would survive strict scrutiny review.

15

WL 3073926, at *37, 2021 U.S. Dist. LEXIS 133300, at *100–01 (finding Indiana University's vaccine mandate had a rational basis); *Valdez*, 2021 WL 4145746, at *8, 2021 U.S. Dist. LEXIS 173680, at *27 (finding New Mexico's vaccine mandate orders "are rationally related to [the] legitimate purpose of protecting" the community). In the language of *Jacobson*, Plaintiffs are not likely to show that the Vaccine Mandate lacks a "real or substantial relation" to stemming the spread of COVID-19 or is "beyond all question, a plain, palpable invasion of rights." 197 U.S. at 31. Because Plaintiffs advance no argument that the Vaccine Mandate cannot survive rational basis, they have not demonstrated a likelihood of success on the merits of their substantive due process claim.

### 3. Fourteenth Amendment Procedural Due Process Claim

Plaintiffs argue that the Vaccine Mandate deprives them of their protected property interest in continued public employment without due process of law. (Dkt. No. 4-1, at 17). Defendants respond that Plaintiffs do not have a protected interest in continued employment which would trigger procedural due process protections. (Dkt. No. 10, at 11).

The Due Process Clause of the Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The "two threshold questions" in any procedural due process claim are (1) whether the plaintiff "possessed a liberty or property interest protected by the United States Constitution or federal statutes" and (2) "if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citations omitted). A public employee has a property interest in continued employment "if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, although Plaintiffs argue that they "possess a property interest in their jobs as

public employees," (Dkt. No. 4-1, at 17), they cite no authority for this proposition and provide no facts which might otherwise support a finding that they have a protected property interest in their continued employment. Accordingly, the Court finds that Plaintiffs have not made a showing that they are likely to succeed on the merits of their procedural due process claim.

### B.   Irreparable Harm

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Actavis*, 787 F.3d at 660 (quoting *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (internal footnote omitted).

A court will presume that a plaintiff has established irreparable harm in the absence of preliminary relief if the claim involves the alleged deprivation of a constitutional right. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (quoting 11C Charles A. Wright et al., Fed. Practice & Proc. § 2948 (1st ed. 1973))); *Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) ("[A]s a general matter, there is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights."). While an allegation of a constitutional violation "is insufficient to automatically trigger a finding of irreparable harm," if "the constitutional deprivation is convincingly shown and that violation carries noncompensable damages, a finding of irreparable harm is warranted."

*Mangano*, 886 F. Supp. 2d at 150. To "determine whether the constitutional deprivation is convincingly shown" the Court must "assess[ ] the likelihood of success on the merits." *Id.* (citing *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000) ("Because the violation of a constitutional right is the irreparable harm asserted here, the two prongs of the preliminary injunction threshold merge into one: in order to show irreparable injury, plaintiff must show a likelihood of success on the merits.")).

Here, as discussed above, Plaintiffs have failed to show a likelihood of success with respect to their constitutional claims. Moreover, neither the loss of employment nor economic loss constitutes irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90–91 (1974); *see also Int'l Bh'd of Teamsters v. Pan Am. World Airways, Inc.*, 607 F. Supp. 609, 613–14 (E.D.N.Y. 1985) (stating the "clear" law in this Circuit that "lost wages do not constitute irreparable harm where the financial injury falls on an easily ascertainable group of employees capable of ultimately being redressed"). The Court therefore concludes that Plaintiffs have failed to show irreparable harm.

### C. Balance of the Hardships

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (alteration in original) (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)). Even assuming that Plaintiffs have shown that the balance of the hardships tips in their favor, without a showing of a likelihood of success on the merits, this factor, alone, is insufficient to warrant injunctive relief.[11]

---

[11] Since a preliminary injunction shall not issue in this case, the Court need not consider whether the issuance of an injunction would harm the public interest. *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir.

**D.   Injunction Pending Appeal**

The Court has also considered Plaintiffs' request for an injunction pending appeal, and the applicable factors, *see, e.g.*, *In re World Trade Center Disaster Site Litigation*, 503 F.3d 167, 170 (2d Cir. 2007); *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994), and finds that Plaintiffs have failed to establish that an injunction pending appeal is warranted.

**V.   CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for a preliminary injunction (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that Plaintiffs' motion for an injunction pending appeal pursuant to Federal Rule of Appellate Procedure 8(a)(1) is **DENIED**; and it is further

**ORDERED** that Defendants' response to the complaint is due within 30 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: November 1, 2021
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge

---

2012) ("[W]hen a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest.").