UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DAPHNE JANE ANDRE-RODNEY, JOHN LUDEWIG,
ORIE MONROE, RYAN G. RICHARDS, RAYMOND
SMITH, PAUL J. WILLIAMS, SYED AZAD, MICHAEL        1:21-cv-1053 (BKS/CFH)
THOMAS FINELLI, and BRYAN REEVES,

                                 Plaintiffs,

v.

KATHY HOCHUL, in her official capacity as Governor of
New York State, NEW YORK STATE, MARY T.
BASSETT, in her official capacity as Health Commissioner
of New York State,[1] NEW YORK STATE
DEPARTMENT OF HEALTH, and NEW YORK STATE
PUBLIC HEALTH AND PLANNING COUNCIL,[2]

                                 Defendants.
_____

**Appearances:**

*For Plaintiffs*:
Dennis C. Vacco
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

*For Defendants*:
Letitia James
Attorney General of the State of New York
Jorge A. Rodriguez
Brittany M. Haner
Assistant Attorneys General, of Counsel
The Capitol
Albany, NY 12224

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Commissioner of Health, Mary T. Bassett, has been substituted in place of her predecessor, Commissioner Howard Zucker.

[2] It appears that the correct name of this entity is the Public Health and Health Planning Council. (Dkt. No. 1-1, at 2).

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiffs Daphnee Jane Andre-Rodney and Michael T. Finelli,[3] New York State Security Services Assistants who currently work at hospitals located in New York State, bring this action against Defendants under 42 U.S.C. § 1983 to challenge the mandate that they be "fully vaccinated against COVID-19" as violative of their constitutional rights. (Dkt. No. 1); *see* 10 N.Y.C.R.R. § 2.61(c) (Aug. 26, 2021). On November 1, 2021, after briefing and a telephonic hearing, the Court denied Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs had not made a showing of a likelihood of success on the merits of their constitutional claims or of irreparable harm. *See generally Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128 (N.D.N.Y. 2021). Presently before the Court is Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 21). Plaintiffs opposed the motion, (Dkt. No. 25), and Defendants responded, (Dkt. No. 28).[4] For the following reasons, Defendants' motion is granted.

---

[3] Since commencement of this action, the seven other original plaintiffs have either retired or received the COVID-19 vaccine and returned to work. (Dkt. No. 21-2, at 4). Plaintiffs acknowledge that these seven plaintiffs "no longer have standing" in this action. (Dkt. No. 25, at 3 n.1). "A federal court loses jurisdiction to entertain a claim that has become moot." *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020), *abrogated on other grounds*, *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Therefore, the claims asserted by Plaintiffs Ludewig, Monroe, Richards, Smith, Williams, Azad, and Reeves are moot and must be dismissed for lack of subject matter jurisdiction. *Chevron Corp. v. Donziger*, 833 F.3d 74, 123–24 (2d Cir. 2016) ("A case is moot when 'the parties lack a legally cognizable interest in the outcome.'" (citation omitted)).

[4] Plaintiffs filed a letter requesting that the Court schedule oral argument on the motion to dismiss. (Dkt. No. 30). Such requests are "subject to the discretion of the presiding judge." N.D.N.Y. L.R. 7.1(a). Having reviewed the parties' thorough submissions, the Court finds oral argument unnecessary.

II.   FACTS[5]

  A.   **COVID-19 Vaccines**

This case arises out of regulations adopted by the Public Health and Health Planning Council (the "Council") of the New York State Department of Health ("DOH") in response to the COVID-19 pandemic. The United States Department of Health and Human Services declared COVID-19 a public health emergency on February 4, 2020. (Dkt. No. 1, ¶ 28). Pharmaceutical companies Pfizer, Moderna, and Johnson & Johnson ("Janssen") all applied for and received emergency use authorization ("EUA") for the COVID-19 vaccines each developed. (*Id.* ¶ 31). On August 23, 2021, the Food and Drug Administration ("FDA") fully approved the Pfizer vaccine for individuals 16 years of age and older. (*Id.* ¶ 32).[6] The Moderna and Janssen vaccines retain their EUA but have not yet been fully approved by the FDA, meaning they "have not gone through the typical six stages of approval." (*Id.* ¶ 33).

Plaintiffs allege that, although the COVID-19 vaccines "appear to be relatively safe at a population level, like all medical interventions, the vaccines carry a risk of side effects." (*Id.* ¶ 34). Such side effects "include common, temporary reactions such as pain and swelling at the vaccination site, fatigue, headache, muscle pain, fever, and nausea." (*Id.*). "More rarely," the vaccines can cause "serious side effects that could result in hospitalization or death." (*Id.*). Research "indicates that the vaccines present a heightened risk of adverse side effects to those

---

[5] The facts are drawn from the Complaint and the exhibits attached thereto. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[6] The Court notes that, since commencement of this action, the FDA authorized the Moderna vaccine for use in adults 18 years of age and older, and the Pfizer and Moderna vaccines have received EUA for individuals as young as six months old. *See* "Coronavirus (COVID-19) Update: FDA Authorizes Moderna and Pfizer-BioNTech COVID-19 Vaccines for Children Down to 6 Months of Age," (June 17, 2022), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-moderna-and-pfizer-biontech-covid-19-vaccines-children; *see Basank v. Decker*, 449 F. Supp. 3d 205, 211–12 (S.D.N.Y. 2020) (taking judicial notice of background information regarding COVID-19 taken from the website of the Centers for Disease Control and Prevention ("CDC")).

who have previously contracted and recovered from COVID-19." (*Id.* ¶ 35). Between December 14, 2020 and September 7, 2021, the CDC's Vaccine Adverse Event Reporting System received 7,439 reports of death "among people that have received a COVID-19 vaccination." (*Id.* ¶ 36). Plaintiffs allege that "the long-term effects" of the COVID-19 vaccines "remain unknown and unstudied." (*Id.* ¶ 37).

  **B.** **The Vaccine Mandate**

DOH has the authority to "supervise and regulate the sanitary aspects" of "businesses and activities affecting public health." N.Y. Pub. Health Law § 201(1)(m). Pursuant to its authority, DOH published a proposed emergency regulation for review and adoption by the Council. (*See* Dkt. No. 1-1, at 9). The Council adopted the emergency regulation on August 26, 2021; the regulation immediately went into effect for ninety days. (*See* Dkt. No. 1, ¶ 42; *see also* Dkt. No. 1-1 (text of the adopted amended regulation and its Regulatory Impact Statement)); *see* 10 N.Y.C.R.R. § 2.61 (Aug. 26, 2021) (regulation as codified) (the "Vaccine Mandate"). The Vaccine Mandate was adopted against the backdrop of the predominance of the Delta variant of the COVID-19 virus, a variant which was more transmissible than previous variants. (Dkt. No. 1-1, at 11).

The Vaccine Mandate applies to "[c]overed entities," defined to comprise any facility included in the definition of "hospital" in Public Health Law § 2801, agencies established pursuant to Public Health Law Article 36, hospices as defined in Public Health Law § 4002, and adult care facilities under DOH's regulatory authority. 10 N.Y.C.R.R. § 2.61(a)(1). The Vaccine Mandate requires covered entities to "continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for all other covered entities absent

receipt of an exemption." *Id.* § 2.61(c).[7] "Personnel" is defined as "all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *Id.* § 2.61(a)(2).

Plaintiff Daphnee Andre-Rodney is a Security Services Assistant employed or affiliated with SUNY Downstate Health Sciences University in Brooklyn, New York. (Dkt. No. 1, ¶ 12). Plaintiff Michael Finelli is a Security Services Assistant employed or affiliated with SUNY Stony Brook in Stony Brook, New York. (*Id.* ¶ 19). SUNY Downstate Health Services University and SUNY Stony Brook are "hospitals, as defined in [Public Health Law] section 2801." (*Id.* ¶ 1). Plaintiffs are members of the New York State Correctional Officers and Police Benevolent Association, Inc. (*Id.* ¶ 21). Plaintiffs object to the Vaccine Mandate and state that they will lose their jobs "unless they submit to the invasions of their bodies through a vaccination that carries unknown risks of serious side effects." (*Id.* ¶ 50).[8] Plaintiffs are "willing to abide by all mask mandates and a Testing Option." (*Id.* ¶ 48).

---

[7] The regulation has been amended since the commencement of this action and now reads: "Covered entities shall continuously require personnel to be fully vaccinated against COVID-19, absent receipt of an exemption as allowed below. Covered entities shall require all personnel to receive at least their first dose before engaging in activities covered under [paragraph (2)(a)]." 10 N.Y.C.R.R. § 2.61(c) (June 22, 2022). Unless otherwise noted, in this decision the Court cites to the text of the regulation as adopted on August 26, 2021.

Medical exemptions are available if "any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of [a] member of a covered entity's personnel, based upon a pre-existing health condition" until immunization "is found no longer to be detrimental to such personnel member's health." *See id.* § 2.61(d)(1). The regulation now also permits a medical exemption based on the certification of a physician assistant. *Id.* (June 22, 2022).

[8] The record before the Court does not reflect whether Plaintiffs have in fact lost their jobs since the filing of the Complaint.

### III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV. ANALYSIS

Plaintiffs' Complaint alleges that the Vaccine Mandate violates their Fourteenth Amendment right to Equal Protection and their Fourteenth Amendment substantive due process rights. (Dkt. No. 1, ¶¶ 56–99). Defendants move to dismiss the Complaint in its entirety.

#### A. Equal Protection Claim

Plaintiffs first allege that the Vaccine Mandate violates the Equal Protection Clause because it treats Plaintiffs differently than a similarly situated group—teachers—without any rational basis. (Dkt. No. 1, ¶¶ 56–69). Plaintiffs allege that there is no rational basis for imposing the Vaccine Mandate on those working in healthcare settings but not on teachers, who have the option, in lieu of mandatory vaccination, of undergoing regular testing. (*Id.*).[9] Defendants argue

---

[9] On September 2, 2021, the Council approved regulations applicable to settings which "may include schools." (*See* Dkt. No. 1-2 (text of the adopted regulation and its Regulatory Impact Statement)); *see* 10 N.Y.C.R.R. § 2.62 (regulation as codified). Section 2.62 provides that the Commissioner "may require routine COVID-19 testing in certain settings," such as schools. 10 N.Y.C.R.R. § 2.62(a). The entities subject to routine testing "may accept

6

that Plaintiffs' Equal Protection claim must be dismissed because Plaintiffs have not alleged facts sufficient to overcome the presumption of constitutionality which attaches to the Vaccine Mandate or negated all possible rationales for the distinction made between healthcare and school settings. (Dkt. No. 21-1, at 9–11). Plaintiffs respond that they have plausibly alleged that "denying Plaintiffs the testing option that is provided to public school teachers" is "arbitrary and irrational." (Dkt. No. 25, at 5–7).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause therefore "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Where the law at issue "neither burdens a fundamental right nor targets a suspect class," the Court will uphold a "classification so long as it bears a rational relation to some legitimate end." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). This "rational-basis" review is a "highly deferential" review which presumes that a law is constitutional. *Id.* (citations omitted). The burden is on the challenger "to negative every conceivable basis which might support" the law. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (citation omitted).

Here, considering the Vaccine Mandate and the regulations applicable to New York State teachers together, DOH's regulations make a distinction between individuals who are employed in healthcare settings and those who work in schools. *See* 10 N.Y.C.R.R. §§ 2.61(c), 2.62(a). A

---

documentation demonstrating full vaccination in lieu of imposing such testing requirements." *Id.* § 2.62(a)(1). However, full vaccination is not mandated.

7

classification based on one's profession or work setting is not a suspect classification subject to strict scrutiny, *see City of Cleburne*, 473 U.S. at 440–41 (discussing classifications subject to strict scrutiny), and the parties agree that the classification at issue is subject to rational basis review.[10] The differential treatment of employees in healthcare and school settings therefore will not violate the Equal Protection Clause "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 219 (2d Cir. 2012); *see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (noting that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated" the enacting authority). At the motion to dismiss stage, a plaintiff "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Immaculate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204, 211 (N.D.N.Y. 2011) (citation omitted). "When neither the complaint nor the non-moving party's opposition negate[s] 'any reasonably conceivable state of facts that could provide a rational basis' for the challenged classification, a defendant's motion to dismiss an equal protection claim will be granted." *Id.* (citation omitted).

Defendants argue that Plaintiffs fail to plausibly state an Equal Protection claim because the factual allegations in the Complaint "fail to negate" that the reasons underlying the classification have "a rational relationship with the legitimate government purpose of preventing the spread of COVID-19." (Dkt. No. 21-1, at 11). In support, Defendants point to the "variety of rationales to support the classification" posited by the Court in its decision denying Plaintiffs'

---

[10] The Court assumes for the purpose of this decision that Plaintiffs have plausibly alleged that individuals employed in healthcare settings and those who work in schools are sufficiently similarly situated. (*See* Dkt. No. 1-1, at 25 ("Unvaccinated personnel in [healthcare] settings have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents . . . ."); Dkt. No. 1-2, at 20 (identifying those who work at schools as a "population segment[] that may be at increased risk of transmission due, in part, to their employment or residential circumstances")).

8

motion for a preliminary injunction. (*Id.*). Plaintiffs do not dispute that preventing the spread of COVID-19 is a legitimate governmental objective but argue that the justifications Defendants provided for mandating that Plaintiffs be vaccinated while allowing teachers to abide by a testing option are contradictory and therefore irrational. (Dkt. No. 25, at 6–7). Specifically, the Regulatory Impact Statement for the Vaccine Mandate states that the approach of requiring all healthcare personnel to be tested before each shift would be "limited in its effect because testing only provides a person's status at the time of the test" and would impose an "unreasonable resource and financial burden on covered entities if PCR tests couldn't be rapidly turned around." (Dkt. No. 1-1, at 14). The Statement further notes that antigen tests "have not proven as reliable for asymptomatic diagnosis to date." (*Id.*). On the other hand, the Regulatory Impact Statement for the regulation governing teachers states that "[r]egular COVID-19 testing enables the immediate identification of COVID-19 positive individuals, *even if they are not symptomatic*, so that they can isolate and prevent further transmission." (Dkt. No. 1-2, at 6 (emphasis added)).

Even assuming that Defendants' statements regarding the appropriateness and efficacy of regular testing are contradictory and irrational, the Court concludes that Plaintiffs have failed to state an Equal Protection claim because their Complaint and opposition do not negate all "reasonably conceivable state[s] of facts that could provide a rational basis" for the differential treatment of personnel in healthcare and school settings. *Immaculate Heart*, 797 F. Supp. 2d at 211. Importantly, the Court "is not confined to the particular rational or irrational purposes that may have been raised in the pleadings." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49–50 (2d Cir. 2018) (citing *Johnson v. Baker*, 108 F.3d 10, 11–12 (2d Cir. 1997)); *see also Beach Commc'ns*, 508 U.S. at 315 (noting that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated" the

enacting authority). Those working in covered healthcare settings are more likely to come into contact with individuals who have comorbidities or are otherwise more likely to experience complications or serious illness as a result of contracting the COVID-19 virus. (*See* Dkt. No. 1-1, at 11).[11] Moreover, while Plaintiffs argue that "it has become increasingly clear that individuals that are immunized against COVID-19 may still become infected with the virus," (Dkt. No. 25, at 7), it remains the case that those who are vaccinated against COVID-19 are less likely to experience serious illness or complications, (*see* Dkt. No. 1-1, at 11 (noting that, at the time the Vaccine Mandate was implemented, unvaccinated individuals "have over 11 times the risk of being hospitalized with COVID-19")). Finally, as posited by the Court in its decision denying Plaintiffs' motion for a preliminary injunction, it is not irrational to require vaccination in healthcare settings, and not schools, with the aim of preventing an outbreak of COVID-19 among staff which could lead to healthcare facilities' decreased capacity to treat patients. A COVID-19 outbreak in a school setting would not have the same deleterious effect on the healthcare system's ability to treat patients.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' Equal Protection claim.

### B.    Fourteenth Amendment Substantive Due Process Claim

Plaintiffs allege that the Vaccine Mandate violates their Fourteenth Amendment substantive due process rights by violating their right to refuse unwanted medical treatment and by imposing an unconstitutional condition on their continued employment. (Dkt. No. 1, ¶¶ 70–

---

[11] The Court notes the fact that children as young as six months old can now receive the Pfizer and Moderna vaccines, making it even more probable that employees in healthcare settings are more likely to encounter vulnerable individuals than teachers are.

99).[12] Defendants argue that Plaintiffs' substantive due process claim should be dismissed because (1) the "right to refuse vaccination" is not a fundamental right subject to substantive due process protection, (2) any right to refuse vaccination is not actually burdened by the Vaccine Mandate, (3) the Vaccine Mandate does not implicate a fundamental right to pursue a chosen career, and (4) the Vaccine Mandate is not arbitrary or conscience-shocking. (Dkt. No. 21-1, 13–17). Plaintiffs respond that (1) the Vaccine Mandate implicates their liberty interest in refusing unwanted medical treatment, (2) the Vaccine Mandate violates the "unconstitutional conditions doctrine" by impermissibly conditioning their employment on receipt of the COVID-19 vaccine, and (3) they have stated a constitutional claim under the framework set forth in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). (Dkt. No. 25, at 8–15).

"[T]he Due process Clause of the Fourteenth Amendment embodies a substantive component that protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). But "'substantive due process' . . . does not stand as a bar to all governmental regulations that may in some sense implicate a plaintiff's 'liberty.'" *Id.* "Rather, the level of scrutiny" to which a governmental regulation is subject "turns on the nature of the right at issue." *Id.* "Where the right infringed is fundamental, strict scrutiny is applied," *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003), and, to survive review, the "challenged regulation must be narrowly tailored to promote a

---

[12] Although Plaintiffs' Complaint contains two separate counts—one for "violation of the Fourteenth Amendment right to refuse unwanted medical treatment" and one for "violation of Plaintiffs' Fourteenth Amendment right to due process"—the parties' submissions make clear that Plaintiffs' claims are all brought for violation of their substantive due process rights. Defendants argue that Plaintiffs fail to allege the deprivation of a protected liberty or property interest as would be required to state a procedural due process claim. (Dkt. No. 21-1, at 18). Plaintiffs do not respond to this assertion. Therefore, to the extent Plaintiffs' Complaint could be read to assert a procedural due process claim, that claim is deemed abandoned. *See Lugo v. Hannah*, No. 19-cv-1270, 2020 WL 3489250, at *4, 2020 U.S. Dist. LEXIS 112889, at *11–12 (D. Conn. June 26, 2020) (citations omitted).

compelling Government interest" and "must use the least restrictive means to achieve its ends." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014) (citation omitted). In contrast, "[w]here the claimed right is not fundamental," rational basis review is applied, and "the governmental regulation need only be reasonably related to a legitimate state objective." *Immediato*, 73 F.3d at 461 (citing *Reno v. Flores*, 507 U.S. 292, 303–06 (1993)).[13]

### 1. Whether Plaintiffs Have Asserted a Fundamental Right

"In assessing whether a government regulation impinges on a substantive due process right, the first step is to determine whether the asserted right is 'fundamental.'" *Leebaert*, 332 F.3d at 140. "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Immediato*, 73 F.3d at 460–61. Here, Plaintiffs rely on their liberty interest in refusing unwanted medical treatment. However, Plaintiffs have not plausibly alleged that the Vaccine Mandate directly implicates that interest, as the Vaccine Mandate does not force Plaintiffs to consent to vaccination. *Cf. Doe v. Zucker*, 520 F. Supp. 3d 217, 250–51 (N.D.N.Y. 2021) (finding that regulations requiring vaccination of schoolchildren did not "directly infringe" on the plaintiffs' liberty interest in refusing unwanted medical treatment because the regulations did not "force parents to consent to vaccination of their children"), *aff'd sub nom. Goe v. Zucker*, No. 21-537, --- F.4th ---, 2022 WL 3007919 (2d Cir. July 29, 2022). Rather, the Vaccine Mandate conditions Plaintiffs' right to be employed at a

---

[13] The parties' briefing refers to the standard set forth in *Jacobson*, under which a court must not invalidate a law or regulation "enacted to protect the public health" unless it lacks a "real or substantial relation [to public health]" or "is, beyond all question, a plain, palpable invasion of rights." 197 U.S. at 31. The Second Circuit recently evaluated challenges to school vaccination requirements under the traditional tiers of scrutiny used to assess constitutional claims, *see Goe v. Zucker*, No. 21-cv-537, --- F.4th ---, 2022 WL 3007919 (2d Cir. July 29, 2022), and the Court does the same in this decision. In any event, although *Jacobson* predated the modern tiers of scrutiny, *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020), it has been recognized that the Court "essentially applied rational basis review," *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). Thus, because the Court concludes that the Vaccine Mandate is subject to and survives rational basis review, applying the *Jacobson* framework would not alter the outcome on Defendants' motion to dismiss.

covered entity on their vaccination against COVID-19. *Cf. We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir. 2021) ("Although [the plaintiffs] have a hard choice to make, they do have a choice. Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers."); *Goe*, 2022 WL 3007919, at *7 ("The State is not forcing any child to be vaccinated against her parents' will."). Thus, the right that is being burdened is the right to employment at a covered healthcare entity in New York.[14] Plaintiffs therefore have not alleged that the Vaccine Mandate directly infringes a fundamental right.

### 2. Application of the Rational Basis Test

Because Plaintiffs' claimed right is not fundamental, the Vaccine Mandate is subject to rational basis review and "need only be reasonably related to a legitimate state objective." *Immediato*, 73 F.3d at 461. Defendants argue that they acted in accordance with substantive due process requirements and that "vaccine mandates such as the one at issue here pass constitutional muster." (Dkt. No. 21-1, at 16–17 (collecting cases)). Plaintiffs respond that they have stated a claim because "the consequences Plaintiffs face in exercising their right to refuse medical treatment are substantially more penal than the consequences in *Jacobson*" and because the Defendants arbitrarily determined that periodic testing is "not a practical alternative to mandatory vaccination." (Dkt. No. 25, at 13–15).

The Court finds that Plaintiffs have not plausibly alleged a Fourteenth Amendment substantive due process claim because they have not negated "every conceivable basis which might support" the Vaccine Mandate. *Lehnhausen*, 410 U.S. at 364.[15] Plaintiffs primarily argue, without any supporting authority, that they have stated a claim because the consequence they

---

[14] Plaintiffs do not argue that they have a fundamental right to pursue a chosen career. (*See generally* Dkt. No. 25; Dkt. No. 21-1, at 15–16).

[15] Plaintiffs do not argue that stemming the spread of COVID-19 is not a legitimate state objective.

13

face for failing to comply with the Vaccine Mandate—the loss of their jobs—is more serious than those the *Jacobson* plaintiff faced. In *Jacobson*, the Supreme Court considered a Massachusetts statute, enacted during a smallpox epidemic, which required individuals to be vaccinated, pay a $5 criminal fine, or, in the case of children, establish their qualification for an exemption. 197 U.S. at 12. However, even assuming the loss of Plaintiffs' jobs is a more serious consequence than the criminal proceeding in *Jacobson*, Plaintiffs nonetheless have failed to allege that the Vaccine Mandate is not "reasonably related" to stemming the spread of COVID-19. Indeed, courts in this Circuit and around the country have concluded that vaccination requirements such as the one imposed here pass muster under rational basis review. *We the Patriots*, 17 F.4th at 290 (holding that the Vaccine Mandate "was a reasonable exercise of the State's power to enact rules to protect the public health"); *Kane v. de Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) (holding that New York City's mandatory vaccination requirement for teachers "plainly satisfies" rational basis review); *Ferrelli v. Unified Court Sys.*, No. 22-cv-68, 2022 WL 673863, at *6, 2022 U.S. Dist. LEXIS 39929, at *19 (N.D.N.Y. Mar. 7, 2022) (finding that the New York Unified Court System's vaccine mandate "easily meets the rational basis standard"); *Marciano v. de Blasio*, No. 21-cv-10752, --- F. Supp. 3d ---, 2022 WL 678779, at *8–9, 2022 U.S. Dist. LEXIS 41151, at *21–24 (S.D.N.Y. Mar. 8, 2022) (dismissing substantive due process claim and noting that "courts in this Circuit have uniformly recognized the validity of vaccine requirements . . . when challenged on substantive due process grounds"). Furthermore, while Plaintiffs' allegations regarding Defendants' inconsistent statements on the efficacy of testing options in healthcare and school settings might be relevant to a strict scrutiny analysis, they are not determinative of whether the mandatory vaccination of healthcare workers bears a rational relation to the legitimate end of controlling the spread of COVID-19. *See Sensational Smiles,*

*LLC v. Mullen*, 793 F.3d 281, 284–85 (2d Cir. 2015) ("[I]t is not the role of the courts to second-guess the wisdom or logic of the State's decision.").

Thus, Plaintiffs have failed to plausibly allege that the Vaccine Mandate violates their Fourteenth Amendment substantive due process rights.

### 3. Unconstitutional Conditions Doctrine

Plaintiffs argue that their claim is "primarily based upon the 'unconstitutional conditions doctrine.'" (Dkt. No. 25, at 8–9). More specifically, Plaintiffs argue that the Vaccine Mandate "burdens their fundamental right to refuse medical treatment at the cost of their continued employment as a healthcare worker." (*Id.* at 11–13 ("Plaintiff[s] allege that Defendants have denied them a benefit—their employment and the benefits derived therefrom—because they are exercising a constitutional right to refuse unwanted medical treatment.")). Defendants respond that Plaintiffs' unconstitutional conditions claim fails as a matter of law because "the right to refuse vaccination is not a fundamental right subject to substantive due process protection." (Dkt. No. 28, at 6).

The "unconstitutional conditions doctrine" reflects "an overarching principle . . . that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).[16] "Pursuant to this 'unconstitutional conditions' doctrine, as it has come to be known, the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance." *Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,

---

[16] While the doctrine is "typically associated with enumerated rights, it may apply to coercion by the government involving any constitutional right." *Norris v. Stanley*, No. 21-cv-756, 2022 WL 247507, at *3–4, 2022 U.S. Dist. LEXIS 17083, at *10–11 (W.D. Mich. Jan. 21, 2022) (citing *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974), which applied the doctrine to a statute that impermissibly burdened the right to interstate travel).

15

651 F.3d 218, 231 (2d Cir. 2011) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)), *aff'd*, 570 U.S. 205 (2013). A "predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz*, 570 U.S. at 612 (citing *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 59–60 (2006)); *see also Goe*, 2022 WL 3007919, at *10 n.16

The Court finds that Plaintiffs have failed to plausibly allege a constitutional violation based on the unconstitutional conditions doctrine. Even assuming that Plaintiffs' public employment is a government benefit, *see Perry*, 408 U.S. at 597 (applying the unconstitutional conditions doctrine to denial of public employment (collecting cases)), Plaintiffs have not alleged that their employment is conditioned on their "giving up" a right protected by substantive due process. In *Cruzan v. Director, Missouri Department of Health*, the Supreme Court recognized that the "principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred" from its prior decisions. 497 U.S. 261, 278 (1990); *see also Pabon v. Wright*, 459 F.3d 241, 249 (2d Cir. 2006) (recognizing this liberty interest). However, Plaintiffs have not provided any authority suggesting that this protected liberty interest is a fundamental right or that it is broad enough to cover the right to refuse vaccination in these circumstances. *Cf. Kheriaty v. Regents of Univ. of Cal.*, 21-cv-1367, 2021 WL 6298332, at *6, 2021 U.S. Dist. LEXIS 249705, at *17 (C.D. Cal. Dec. 8, 2021) (noting that "the fact that some medical procedures implicate fundamental rights does not mean that is true for every medical procedure generally, and vaccination in particular"), *appeal docketed*, No. 22-55001 (9th Cir. Jan. 3, 2022); *Brox v. Woods Hole*, No. 22-cv-10242, --- F. Supp. 3d ---, 2022 WL 715566, at *6, 2022 U.S. Dist. LEXIS 42447, at *13 (D. Mass. Mar. 10,

16

2022) (noting that a "*general* liberty interest in refusing medical treatment" is not the same as a "*fundamental* liberty interest"). Indeed, as the Second Circuit has recently stated, "[b]oth [the Second Circuit] and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional.'" *We the Patriots*, 17 F.4th at 293 (citations omitted); *see also Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (noting that *Jacobson*, "which sustained a criminal conviction for refusing to be vaccinated, shows that plaintiffs lack" a "fundamental right ingrained in the American legal tradition"); *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Ore. 2021) (joining the "growing consensus" of courts recognizing that "there is no fundamental right under the Constitution to refuse vaccination" and collecting cases).

Plaintiffs therefore have not plausibly alleged that the state could not directly impose a vaccination requirement as part of the state's police power. *Cf. Doe #1–#14 v. Austin*, 572 F. Supp. 3d 1224, 1240–41 (N.D. Fla. 2021) (finding that the plaintiffs had not shown a likelihood of success on the merits on their unconstitutional conditions claim where they had not shown a likelihood of success on their claim that the Department of Defense's vaccine mandate "cannot constitutionally be imposed directly"); *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707 n.4 (C.D. Cal. 2022) (noting that "a government entity does not impose an unconstitutional condition by enforcing a duly enacted, constitutional law"). Plaintiffs have thus failed to allege a required "predicate" of an unconstitutional conditions claim, *Koontz*, 570 U.S. at 612.

In sum, the Court concludes that Plaintiffs have failed to state a claim for violation of their Fourteenth Amendment substantive due process rights and therefore grants Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claims.[17]

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that the claims of Plaintiffs John Ludewig, Orie Monroe, Ryan G. Richards, Raymond Smith, Paul J. Williams, Syed Azad, and Bryan Reeves are **DISMISSED** without prejudice as moot; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: <u>August 1, 2022</u>
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[17] Plaintiffs have not sought permission to amend the Complaint, and have not provided any basis to suggest there is a viable basis to amend.